We have the next case this morning, which is 23-7041, United States v. Brown. And counsel, for the record, if you would make your appearance and then proceed. Thank you, Your Honor. Shira Keevel again for Mr. Brown. In this second argument, I'm discussing Mr. Brown's trial for killing his friend, Damian Martin. The issue on appeal here is the denial of the requested involuntary manslaughter instruction, although on plain error review. And the main question is whether there was any evidence that would have allowed the jury to rationally acquit Mr. Brown of murder and instead convict him of involuntary manslaughter on the theory of the imperfect defense of another. And here we have the classic example of this imperfect defense. That's where you can show me the evidence in this case, counsel. So proceed. I mean, every lawyer has the evidence that they have, and different amounts are required in different cases. But here we have significant evidence, right? This classic case is where you have voluntary intoxication that causes the defendant to misperceive a threat and act honestly but unreasonably on that misperception. Isn't that the name of the defense? Like impermissible or something? Imperfect. Yeah, imperfect is the word. That's the very name of the defense that you may be entitled to. That's right, Your Honor. And here I think the district court properly understood that everyone involved in this was high on methamphetamine, recognized that the government had zero evidence of motive, and also rejected the complete justification of defense of another, not because, quote, the defendant did not believe it, but because he didn't reasonably believe it. And here we have significant evidence. We need not much, but we have significant evidence. That Mr. Brown had been on a days-long methamphetamine bender with his friend, Damian Martin. That he would have known that Mr. Martin bought a gun during this time, and that he had it with him almost always, even if it wasn't visible. Can I interrupt for just a minute? I'm a little confused. The gun apparently is in the bathroom after the murder, and Mr. Brown is holding the gun. Do we know where the gun was immediately prior to Mr. Brown rushing into the bathroom? So I would say a few things in response to that. One, we don't need to know we have enough other evidence. Two, the testimony is that Mr. Brown picked it up from the counter. The counter in the bathroom. Correct. And three, we have habit evidence that this court can rely on, and we must draw all the inferences in favor of Mr. Brown here. We have habit evidence that Mr. Martin was carrying this with him all the time. So from this, and then Lacey Watson, the sister, didn't see who brought it in there. Combination of that, we view that in the light most favorable to Mr. Brown. Mr. Martin has that gun with him in the bathroom, and Mr. Brown knows it. Mr. Brown would have known that his sister wanted Mr. Martin to get out of the bathroom, used colorful language to try to get that to happen. He knew Mr. Martin was not leaving. He knew that Mr. Martin was demanding physical intimacy. He had no knowledge that they had ever consensually intimate with each other before, and in fact thought that his sister was dating somebody else. And when he goes into the bathroom armed with that knife, what does he see? He sees his sister has wrapped herself in a shower curtain rather than allow Damian Martin to hug her naked body. He immediately stabs him and then immediately says, he was going to kill you, Lacey. Lacey says, no, that is, again, colorfully, that's not what was going to happen. I like that term, colorful language. Go ahead. I mean, I would love to swear to the Lord, but I'll stick with that. And even later, right, he hears that. Yes, his story changes somewhat based on that, but he never, even when he expresses remorse, he never wavers in the idea that he did this to protect his sister. I think the reasons we're here are not because of insufficiency of the evidence, but we're here because it just wasn't talked about. So that's why we're on plain error. Well, let me talk about plain error for a second. Why didn't, why aren't you guilty of the same waiver on prong two that you accused the government of? I mean, as I read your brief, you conflate error and clear or obvious error. And therefore, why do I know that discreetly the error that took place here is clear and obvious? I mean, you're accusing the government in your reply brief of something that amounts to a briefing waiver. Why haven't you done exactly the same thing? I don't believe we conflated it at all. I went out of my way. You have one section. You don't have two sections. You have one section in which you use the word, it's clearly error. Well, that is not a discreet analysis of whether an error is clear or obvious error for purposes of the plain error standard. Why is that right? And your honor, in that briefing, we set out a separate section on what the law is and how clear it is. And the law in this case is very clear that imperfect defense of others is involuntary manslaughter. That's what the law is. The question is whether the law maps onto these facts in such a patent way that the district court would have understood that it had to require, that this instruction was required. That goes to the question of whether any error that you've shown based upon the cases you cite is actually clear or obvious error. And that is generally, because there are four prongs to plain error, that generally calls for a separate section to talk about prong two. And your honor, I don't believe we needed a separate section. I believe that I went through in that section and not only explained exactly why the law is clear, and I think it is patently clear, but why these facts clearly fit that law. It is very clear, and it seemed to be clear to the judge, that there was a subjective belief that the use of force was necessary to prevent imminent death or grave bodily injury. And that was patently clear. The government says, I'm not going to say they conceded it below, but they say, at most, this is the imperfect defense of another. This is something that was right there on the record. These facts, the importance of them, what they mean, and that error, I think potentially induced by the government, but not spoken of, obviously, by anyone, is this error that that was a type of voluntary manslaughter. And this court's law is very clear. If it wasn't clear before Britt, it's certainly clear afterward that these facts give rise to that imperfect defense, and it is very clear that that requires the giving of an involuntary manslaughter instruction, which is what was proposed here. Counsel, help me out here, because at the trial court level, the proper instruction was tendered. And when the trial court settled the instructions, he did not give your instruction, which would necessitate if it were so plain that the trial court should have given that instruction, but didn't. So you have a error. But if it was so plain, why didn't the trial court give it? What was his explanation? And it was none, because there was no objection. So the question is, how do you benefit from that? And, Your Honor, we don't benefit. I mean, we would have benefited by objecting below. We would have benefited by getting this instruction. But you didn't. That's the reason why I'm going back to where Judge Holmes is coming from. How is that error so plain? And if it was that plain, why didn't you say something to the trial court? So it must have not been quite that plain. And, Your Honor, it can be plain error based on subsequent case law. It could be plain error in the face of the defense's silence. There's no requirement. The whole point is that we didn't object, and so now we have this burden on prongs three and four. We also have to show that it's plain. Mistakes are made. People submit instructions in the heat of trial, forget what they submitted, forget what the law is, forget to make the objection. I don't know why this error happened. I don't know if it was because we had this visiting judge from the District of Louisiana in the Fifth Circuit simply never had a case involving imperfect self-defense or defense of another. I don't know why the error was made, but that does not make it not plain. You were not trial court below then. I mean, that's why we have this sort of second way to win an appeal. And what the law says is that we look to see, was there error? Is that error plain? Was it prejudicial? And then do we have this fourth prong affecting the fairness, integrity, or public reputation of proceedings? And let me focus on three for a second, or have you focused on that. What do we do with the fact that the jury had initially convicted him of first degree murder? I mean, does that factor at all into how we view the nature of the evidence that would have supported whether that evidence would have allowed for an imperfect self-defense? No, Your Honor, for quite a few reasons. Okay. One, we're looking at whether a reasonable jury could have concluded that this was involuntary manslaughter. And properly instructed. And properly instructed, yes. So we have, for example, the Hicks case that was just decided, where the issue was they weren't properly instructed. But I also think that these are not inconsistent, right? The idea that you have realized that you are going to be killing somebody, that you have made that decision, whatever it is that we require, which is not much for premeditation, is not inconsistent with the defense of another. We don't require the person to have not thought. We don't require emotion. We don't require reasonableness, right? So I don't see that verdict as inconsistent. And I do see reaching that verdict because the jury was not properly instructed. So even if you were to discount the fact that the judge below thought that that was unreasonable, and that this was an unreasonable jury, I don't see that as applicable. The government makes another argument, I don't know if your honor is interested in addressing that one, where they say, well, they rejected this kind of voluntary intoxication defense. But that was very different. That was so intoxicated, unable to premeditate, like can't formulate the thoughts. And that is different than intoxicated and so misperceived reality, but still was able to formulate the intent to kill and realize that they had formulated that. I get that. Does your argument for the instruction turn on whether he was, and I don't mean doped up enough to get the voluntary intoxication instruction, but just the fact that he was on methamphetamine, does that turn, your argument turn on that at all? No, your honor. I think that if we simply had that only one piece of evidence, I mean, obviously you have to have some other evidence of what happened, but that one piece of evidence of he was going to kill you, Lacey, that is enough. That is introduced by the government, so it's not hearsay, but that would be an excited utterance. It would be a present sense impression. It is a statement of what happened, a statement of belief. And your honor, I know that the case law has focused on the testimony of the defendant, but that has been in cases where the testimony mattered. This court's job is to look at what evidence was there and credit all of it in the most favorable to the defense. Which would include his being, as the chief said, doped up. Yes, your honor. I think all of the other evidence matters to show how obvious this was, to show how prejudicial this was, but that that one piece of evidence alone would be sufficient. And I mean, we can include the methamphetamine, which I think you agree with, and I guess I just wanted to hear you say that your argument does not stand or fall on whether he was doped up. No, your honor. Okay. All right. And if I may reserve the remainder of my time. Yes. Thank you. Good morning again, your honors. Lisa Williams, representing the United States of America. You have a tougher case here, right? Oh, certainly much different than the first one, your honor. Because at least here, as the government acknowledges in its brief, there is some evidence of his subjective belief, which is very different than the first case. But what the defense is trying to do is, again, to push the bounds of Toledo and Britt and lower the standard for what is required. And what they would like this court to conclude is that as soon as there's any evidence that a defendant subjectively believed that he needed to act in self-defense or defense of others. Let me kind of get in, get with you here in regards to that, because our case law is pretty clear that for this defense, the burden on the defendant is very, very low. It's low, your honor, but it's not non-existent. Well, I didn't say that. It's very low. And I don't see how you can get much lower than what the evidence, forget about the meth, the statement that was made to his sister, which came into evidence, the statement which was made to the deputy sheriff, which is evidence. This is just me, not the court. To me, that is sufficient evidence that may warrant that self-defense. Well, and that's the issue that that is the exact issue that the court has to decide in determining whether there was an error. And I'm kind of giving you a heads up as to at this point where I am. So you better dissuade me of that thought. Well, and here's what Toledo says, your honor, right? It has to be the evidence is sufficient for a reasonable jury to find in the defendant's favor. And that's why it can't just be any evidence. It has to be evidence sufficient for a reasonable jury. So there is a bar that a defendant has to clear. Well, and it's not to believe that what the defendant thought was actually true, but rather the jury just has to have a reasonable belief that the defendant subjectively believed that. The word imperfect is the beginning of that. And it's that a jury could reasonably look at this evidence and say, yes, you were acting in imperfect self-defense. So it has to be a believable, there's got to be enough there to for a reasonable group of 12 people to believe what the defendant is saying. The government admits there's no other motive for him to kill his friend. I mean, well, that was in... The government admits there's no motive, period. Well, all right. That they haven't pointed to some reason why Mr. Brown would suddenly kill his friend. There is certainly evidence that they were high. There's a woman who testifies... They smoked methamphetamine earlier that day. Yes. I will absolutely concede that they had smoked methamphetamine earlier that day. And what effect does that have in this case? Well, again, I would return to what I said before, Your Honor. Lots of people smoke methamphetamine and don't kill their friends. So I don't think that the defense wants to talk about this meth-induced... It's not by itself. It's not by itself. Right. And you have multiple statements by the defendant that, for whatever reason, he thinks that his sister is at risk of rape or murder. Yes. Do you agree? I would agree with that, Your Honor. And then he's outside the bathroom door, and he plausibly heard her tell this gentleman to get out twice, and colorfully. And he doesn't leave, and Mr. Brown then comes in, sees him holding onto her while she's wrapped herself in the shower curtain, and he stabs him. And isn't that enough to get an imperfect self-defense instruction? So the government would say it's not because of a couple things. And when we talk about what he's hearing in the bathroom, Lacy recounted that conversation in great detail at trial. And she said, I told him it was because he was wrapping and he was annoying me. So if you're going to accept that he heard some of the things from outside the door, you have to accept that he heard all of the things from outside the door. And so he knew that she wasn't in danger. Whoa, whoa, whoa, whoa. The jury doesn't have to. It's not black and white, all or nothing. I just don't understand how it would be a reasonable inference that he would only hear a select amount of the conversation. I guess it depends on her volume when she said, get the F out of here. Well, and the government takes issue with whether or not she even said that, because that's not clear from her trial testimony. But in terms of how we're construing the evidence here for purposes of the instruction, we're construing it in the favor of the defendant, are we not? You are construing the evidence in favor of the defendant, but that doesn't mean you can ignore the evidence that undermines the defendant's evidence or the evidence that supports the government. I mean, the court has to look at all of the evidence. We're weighing it instead of the jury? Well, you are weighing it on appeal to see if there was plain error in the court's weight of the evidence when it decided that a imperfect self-defense instruction was not necessary. Well, that brings me, because our discussion right now only gets you maybe the first base, because you've still got to climb the ladder of the plain error that's involved in this question. So... And I do just want to make one other quick comment. I think it's really important evidence that the defendant brought the knife into the bathroom without seeing anything of what's going on, and evidence that this court can't ignore. That's probably what formed the basis for the jury finding premeditation. Well, that's entirely congruent with imperfect self-defense. I mean, the reality is that if he believed that Mr. Martin was going to sexually assault his sister, why wouldn't he bring the knife into the bathroom? Because the basis for which he formed that belief happens after he's already obtained the knife. If he hears her say, get out, and let's focus for a second on this question of how we view the evidence. If it is not entirely clear what the jury heard, but they did hear get out, why do we have to infer that they heard everything? I mean, what we know is the sister told him twice, emphatically, get out. We also have all the testimony to the effect that Mr. Brown was concerned that she might, you know, that this guy might have sexual interest in his sister. Well, okay, get out. He knows that there's some concern about that. Why wouldn't he go in with the means to deal with whatever the situation was? So again, Your Honor, that conclusion is based on some facts that don't exist. Because Lacey said that her brother, the defendant, had no idea that she and Mr. Martin were having any type of sexual No, no, no, no. That actually would cut against their argument. If they thought, I mean, if he knew that there was already a relationship between them, that's one thing. If he doesn't know that, and so as far as he's concerned, this guy, Mr. Martin, is going to do something for the first time to his sister, or do something that's unwanted, period. Do something, you know, regardless of what the relationship was before that, do something unwanted. Why wouldn't he want to take some action? And where is the evidence that he believed that? Because when he first comes into the bathroom, it's not he's going to rape you. It's he's going to kill you. Well, and can we ignore that? I mean, immediately after the stabbing, when the sister says, why? He said he was going to kill you. I mean, he didn't have a lot of time to come up with an excuse, and whether he's right or wrong, it's pretty good evidence that's what he thought. And you cannot ignore that, right? That is evidence. You have to consider that evidence in determining whether or not he has established sufficient evidence that a reasonable jury would buy his imperfect self-defense claim. And the government's argument is that that is not enough evidence under this court's precedence to trigger entitlement to self-defense. I agree with Judge Balduck. We've set the bar pretty low. I think earlier in the prior argument, you said if the defendant gets on the stand and says, I believe this, it's enough. I agree. And I think that if Mr. Brown would have taken the stand in this case and said that, it would be a different issue. But we've already established you don't have to take this stand. You absolutely don't, Your Honor. And the example I gave was, knowing I'm arguing this case next, I gave that example. But that doesn't mean that it's sufficient evidence in the context of this case that a reason, again, a reasonable jury, it has to be enough that a reasonable jury would believe it. OK. So if he hears, I'm sitting outside the bathroom door. I hear my sister tell somebody to get out. She is in that bathroom taking a shower, so she's naked. So I hear somebody, I hear my sister tell somebody to get out twice. And then I go in there, wrong as day, but I believe that that person's going to kill my sister. Why don't I get the defense? And the evidence says that the first thing he said, so rape, kill, who cares? The point was he felt that his sister had a threat of imminent harm, and he acted on it. What else is necessary? Well, let's not forget that he barged into that same bathroom with that same man five minutes previous to that and felt that that was a fine thing to do. So in assessing the reasonableness here of these facts, this defendant brought his friend into the And he feels comfortable enough to do that, but now all of a sudden, five minutes later, he's so concerned that she's going to get raped or killed that he barges in and stabs his friend in the head with a knife. And that's the government's argument in a nutshell. Nobody's saying he's reasonable. That's the reason we're here. Well, but that's the threshold question that this court has to answer is, is this sufficient? But the name of the instruction is an imperfect belief. In other words, you're arguing, well, he doesn't get that. We've set a bar low. So how do I construe the word imperfect? I think that's the word that's used in this instruction, because definitely everything we're talking about is not perfect on the part, but at least for a jury's sake, to let them consider, was it imperfect? So the defendant must have a subjective belief that deadly force was necessary. And if he has that now? And then if it's imperfect, if that belief is unreasonable, then he's entitled to imperfect self-defense. If he has a subjective belief that deadly force is needed and it's also reasonable, then that's self-defense. So under both perfect self-defense or imperfect self-defense, there has to be a subjective belief by the defendant that force was necessary. Who makes that decision? The trial judge. As far as the instruction is concerned, but that's the issue we have, was that error? And that's why I need you to tie now what your argument is with plain error. How do you still win if we agree the other way? Do you still win under the plain error? So the trial judge, as well as defense counsel at the trial stage, what we're arguing about is he had some sort of reason why he needed to rush into the bathroom. And I don't want to call it motive, but it is motive-esque. It's motive adjacent. But there's a reason that he had to go into the bathroom and kill his friend. And the trial judge and defense counsel all conceded it's an inexplicable act. So at the trial stage, looking at this, they didn't say, oh, he was trying to defend Lacey. He was acting in defense of another. They talked about it as an inexplicable act. Well, and the trial court said, not that the defendant didn't believe it, as it relates to her being under threat. Well, if he believed it, I mean, even the court acknowledged that he believed it. And if the court acknowledged that he believed it, isn't that what we're here to talk about? It is, Your Honor. And I'm remiss that I only have a minute left because, of course, because we're under plain error review, plain error is only the first two steps of the analysis. We also have to show an effect on a substantial right. And I do want to address something here. The burden no longer, when looking at the effect on the substantial right, the different outcome in the trial, the burden no longer is for this court to infer everything in favor of the defendant. And that's what the defense is asking this court to do, is to take all inferences in favor of the defense when evaluating the effect on the substantial rights. That is not the law. This is when we can put on our hats and really critique and judge and tear apart the nature and quality of the evidence in this case, and whether or not this jury would have accepted that he did act in imperfect self-defense. And that's where the government feels that the defendant's burden really is not met, and that this case falls apart. Because when you look at the nature and quality and quantity of the evidence, it's just not there that a reasonable jury would then buy onto the defense. And I see my time. Oh, I see my time has expired, so I will thank you all very much. Thank you, counsel. If you wouldn't mind if you'd start with the third prong in the question of how the evidence plays out in that regard. Yes, Your Honor, that was my intention. I don't recall from the government's brief an argument that somehow this way that we view the evidence on third prong shifts, and we no longer view it in the light most favorable to the defendant. And I don't think that's true. I think most instructive here is going to be this court's constructive possession cases. And as you know, most of those arose on plain error. There was an incorrect instruction on constructive possession. And the real question in those cases is, if intent to possess, which is where the error was, was actually at issue, and if the evidence was not so strong that a reasonable jury would be compelled to conclude that that element was proven beyond a reasonable doubt, this court reversed on plain error. I don't see why the standard would change. It is not this court's role to weigh evidence. It is not this court's role to weigh credibility. What this court's role is is to say, is this so strong that a reasonable jury would be compelled to conclude that the element at issue here, which is malice, which is what is undermined by the involuntary manslaughter theory, was proven beyond a reasonable doubt. So you say it's a constitutional error? This is unquestionably a constitutional error. Britt evaluates it as such. Obviously, the burden is shifted, and it's slightly different because the burden has shifted. But the reasonable doubt standard from constitutional error is kind of doubled up in Britt, because both we're looking at, is it harmless beyond a reasonable doubt? But also, we're looking at the jury's role of finding something beyond a reasonable doubt. That part of that survives, even when the burden shifts, and when we need to prove prejudice. This question still remains, would the jury have been compelled to conclude that this was proven beyond a reasonable doubt? And we'd ask this court to reverse. Thank you, counsel, for your fine arguments. That concludes the cases that we have before us this morning.